# UNITED STATES DISTRICT COURT
## For the Western District of North Carolina
## Asheville Division

| | |
|---|---|
| FIRST NATIONAL TITLE INSURANCE COMPANY, | Civil Action No: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| JONATHAN W. WASHBURN, WASHBURN LAW, PLLC, and BUCCANEER TITLE, LLC, | (Injunctive Relief)<br>(Negligence/Gross Negligence)<br>(Jury Trial Demanded) |
| Defendants. | |

## INTRODUCTION

1. This matter arises out of the mishandling and purported stealing of entrusted funds by Jonathan W. Washburn and Washburn Law, PLLC (collectively "***Washburn***") in connection with numerous real estate closings handled by Washburn in Tryon, North Carolina in the latter part of 2022 (the "***Defalcations***"). The facts and circumstances surrounding the Defalcations are still under investigation by the North Carolina State Bar (the "***Bar***"). Because of the Defalcations, Mr. Washburn consented to the entry of a Consent Order of Preliminary Injunction against him restricting his ability to receive, disburse or direct the usage of entrusted funds (the "***Consent Order***"); that injunction was entered in Wake County on December 12, 2022, in civil action number 22 CVS 15168. [**Ex. 1**, ***Consent Order***.]

2. Plaintiff ("***FNTIC***") is a title insurance company. Buccaneer Title, LLC ("***Buccaneer***") is a North Carolina licensed title agent authorized to issue FNTIC ICLs and Policies in accordance with its duties to FNTIC and the terms of its agreement with FNTIC.

3. FNTIC never approved or authorized Washburn to conduct any loan or real estate transactions insured by it. Rather, prior to the Defalcations, Plaintiff denied a request to

allow Washburn to become an approved attorney for FNTIC. However, FNTIC is informed and believed that Washburn received and defalcated with entrusted funds in connection with real estate closings for which a FNTIC insurance policy was issued.

4. Therefore, FNTIC is a party affected by the Defalcations who files this Complaint seeking: (1) to protect the status quo and gain immediate information about the Defalcations so that it can take prompt action to avoid irreparable harm to itself and third parties; and (2) to recover all damages from Defendants arising out of the Defalcations.

## JURISDICTION AND VENUE

5. Plaintiff is a corporation formed and domiciled under the laws of the State of Texas that maintains its principal place of business in Plano, Texas. [**Ex. 2**, *NC Department of Insurance's listing for FNTIC*.]

6. Buccaneer Title, LLC, is a limited liability company formed under the laws of the State of North Carolina that maintains its principal place of business in Charlotte, North Carolina. Upon information and belief, its member(s) are citizens of the state of Florida or of some state other than Texas. [**Ex. 3**, *NC Secretary of State listing for Buccaneer Title, LLC*.]

7. Johnathan W. Washburn is a licensed attorney (N.C. Bar #10569) and realtor (N.C. BIC #212225) who, upon information and belief, is a citizen of North Carolina and is subject to this court's exercise of personal jurisdiction over him upon the completion of service of process under Rule 4, FRCP. [**Ex. 4**, *NC State Bar listing for Washburn*.]

8. Washburn Law, PLLC, is a professional limited liability company duly formed and existing under the laws of the State of North Carolina, and it is subject to this

court's exercise of personal jurisdiction over it upon the completion of service pursuant to Rule 4, FRCP. Upon information and belief, its member(s) are citizens of the state of North Carolina. [**Ex. 5**, *NC Secretary of State listing for Washburn Law, PLLC*.]

9. This court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as this complete diversity of citizenship between the parties and an amount in controversy that exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in the Asheville Division of the Western District of North Carolina under 28 U.S.C. § 1391(b)(1) and (2), as the most substantial part of the events giving rise to this cause of action occurred at Washburn's law office and place of business at 136 Pacolet Street in Tryon, North Carolina.

## FACTUAL ALLEGATIONS

11. Jonathan W. Washburn has been a licensed attorney in North Carolina since 1982, and his law practice is primarily focused on real estate closings. He is also a North Carolina licensed realtor. Upon information and belief, he owns the controlling interest in Washburn Law, PLLC, which is the legal entity he uses to transact his practice of law.

12. FNTIC has been licensed to issue title insurance as defined in N.C. Gen. Stat. § 58-7-15(18) by the North Carolina Department of Insurance since January 2021.

13. N.C. Gen. Stat. § 58-26-1(a) allows for FNTIC to issue insured closing letters/closing protection letters ("*ICLs*") insuring the proper performance of services necessary to conduct a real estate closing performed by an approved attorney licensed to practice in North Carolina, and title insurance policies ("*Policies*") insuring owners and others interested therein against loss by reason of encumbrances and defective title.

14. Buccaneer has been licensed as a title insurance agency in North Carolina

since April 2022. Buccaneer is an insurance producer within the meaning of N.C. Gen. Stat. § 58-3-10(7) and is authorized to issue FNTIC ICLs and Policies to Buccaneer's customers in accordance with Buccaneer's duties to FNTIC and the terms of the agreement between them. Specifically, Buccaneer is required to:

   a. receive and process orders for FNTIC title insurance in a timely, prudent, and ethical manner, with due regard to recognized generally accepted title insurance underwriting practice standards and in accordance with FNTIC's underwriting requirements;

   b. prepare, maintain, and preserve a file for each order for title insurance, which shall include all supporting documents that enable Buccaneer to issue a Policy, binder, or commitment for title insurance, as well as settlement statements and disbursement sheets, affidavits, lien waivers, surveys, title and abstract searches, title examinations, chain and worksheets, together with a copy of all binders, commitments, policies, and endorsements issued; and

   c. prepare all binders, ICLs, and Policies.

15. N.C. Gen Stat. 58-26-1(a) states that no Policy may issue unless an attorney, licensed to practice law in North Carolina who is neither an employee nor an agent of the title insurance company, has conducted or supervised a reasonable examination of the title.

16. Furthermore, North Carolina State Bar APAO 2002-1 provides that a licensed North Carolina lawyer is required to fulfill most of the functions of a real estate closing, including but not limited to:

   a. abstracting or providing an opinion on title to real property;

b. explaining the legal status of title to real estate, the legal effect of anything found in the chain of title, or the legal effect of an item reported as an exception in a title insurance commitment[1];

c. providing a legal opinion, advice, or counsel in response to inquiries by any of the parties regarding legal rights or obligations of any person, firm, or corporation, including but not limited to the rights and obligations created by the purchase agreement, a promissory note, the effect of a pre-payment penalty, the rights of parties under a right of rescission, and the rights of a lender under a deed of trust;

d. drafting legal documents for a party to the transaction or assists a party in the completion of a legal document, or selecting or assisting a party in selecting a form legal document among several forms having different legal implications;

e. determining that all conditions of the purchase agreement or the loan closing instructions have been satisfied in accordance with the buyer's or the lender's interests or instructions;

f. determining that the deed and deed of trust may be recorded after an update of title for any intervening conveyances or liens since the preliminary opinion; and

g. determining that the funds may be legally disbursed pursuant to the North Carolina Good Funds Settlement Act, N.C. Gen. Stat. § 45A-1 et seq.

17. Therefore, in accordance with N.C. Gen. Stat. § 58-26-1 and North Carolina

---

[1] Except as necessary to underwrite a policy of insurance and except that a licensed title insurer, agency, or agent may explain an underwriting decision to an insured or prospective insured, including providing the reason for such decision.

law, FNTIC issues underwriting guidelines to its title agencies and approves specific attorneys and law firms that its title agent, Buccaneer Title, may rely upon in connection with the issuance of a FNTIC ICL or Policy.

18. FNTIC has never approved Washburn to perform any aspects of a real estate transaction insured by it, and it never authorized Buccaneer to issue an ICL insuring Washburn's proper performance of services necessary to conduct a real estate closing. Rather, when a title agency asked FNTIC to approve Washburn earlier in 2022, FNTIC explicitly denied this request due to concerns over his financial competence.

19. Nevertheless, FNTIC learned on the afternoon of December 12, 2022, that Washburn had, without FNTIC approval, been relied upon by Buccaneer in real estate closings in which he issued or caused to be issued ICLs and Policies on behalf of FNTIC. At the same time, FNTIC learned that Washburn's ability to conduct real estate transactions had been halted because of the Defalcations.

20. Washburn has communicated directly with FNTIC on approximately 20 occasions since December 12, 2022. During these communications, Washburn admitted to FNTIC that the Defalcations occurred and Washburn's employee(s) had stolen entrusted funds.

21. FNTIC is informed and believes that Washburn has conducted approximately 138 real estate transactions that involved the issuance of one or more ICL or Policy on behalf of FNTIC.

22. However, FNTIC currently has access to information on only 10 of the 138 title files, and Washburn has refused to provide information on the other transactions that would allow FNTIC to determine what transactions and persons have been impacted by the

Defalcations, e.g. what loan funds purportedly covered under a FNTIC ICL were not properly applied at a closing due the Defalcations or what loans and liens purportedly covered by a FNTIC Policy remain unpaid and unsatisfied following closings due to the Defalcations.

23. FNTIC has made reasonable efforts to attempt to discover this information but has been unable to obtain this information. In addition to trying to get this information from Washburn, FNTIC has reached out to the Bar to obtain title file materials that the Bar has discovered in its investigation. However, Robert Weston, Esq., counsel for the Bar, has indicated the Bar is unable to provide FNTIC any information gathered during its active investigation of Washburn.

24. FNTIC has incurred and is continuing to incur substantial damages due to the Defalcations. Currently, these damages exceed $1.25 million:

   a. Since December 2022, FNTIC has received claims for insurance payments from four lenders stating that liens Washburn was required to pay and satisfy in the course of a closing have not been paid, resulting in at least $239,067.88 in damages.

   b. On December 28, 2022, FNTIC received a notice from an insured buyer that he received a Notice of Hearing on Foreclosure of Deed of Trust because the seller's lien was not satisfied by Washburn and has a remaining loan balance of $57,837.12.

   c. On January 19, 2022, FNTIC received a notice from a seller in a September 22, 2022, closing performed by Washburn that his loan and lien remain unpaid and unsatisfied, and that $148,366.88 remains outstanding.

   d. Additionally, Washburn has informed FNTIC that a HUD payoff in the

amount of $645,000 and a private lender payoff in the amount of $181,649 remain unpaid by Washburn and covered by FNTIC.

25. Because Washburn conducted approximately 138 transactions where FNTIC ICLs and/or Policies were issued, and based on comments from Washburn, FNTIC is informed and believes that this may be the "tip of the iceberg" in losses that FNTIC and the public is facing as the direct and proximate result of Washburn's misconduct.

26. The allegations of this Complaint are further supported and verified by the Affidavit of David Hays, Esq., which is filed herewith and incorporated by reference. [**Ex. 6**, *Affidavit of David Hays, Esq*.]

## FOR A FIRST CAUSE OF ACTION
(Preliminary and Permanent Injunction against the Washburn Defendants)

27. The prior paragraphs are reincorporated herein verbatim.

28. Without immediate intervention by this Court, FNTIC is unable to identify failed closings, loan defaults, and imminent losses that are occurring or about to occur because Washburn allowed entrusted funds to be diverted and/or failed to pay or satisfy prior loans and liens in connection with the Defalcations.

29. Without the information in Washburn's possession in connection with the closings in which Washburn issued or caused an FNTIC ICL or Policy to issue, FNTIC is unable to intervene where unpaid loans are being placed in default by lenders; charges, penalties, interest, collection costs, and attorneys' fees are being added to unpaid debts; liens and encumbrances remain unsatisfied; and legal action and foreclosure proceedings against real property is going forward against persons who believe FNTIC is insuring their interests.

30. If FNTIC is unable to take proactive steps to identify the persons, lenders, and unsatisfied loans and liens affected by the Defalcations, then the potential damages FNTIC

faces because of the Defalcations may increase exponentially and by millions of dollars. For example, if FNTIC discovered that an existing lien in the amount of $50,000 was not paid at a closing handled by Washburn, FNTIC could then pay that lien before the lienholder sales the insured property at a foreclosure sale. If, however, such an existing lender sold the property at a foreclosure sale, then FNTIC's liability would not be the amount of the existing lien, but instead would likely be the full amount of the policy, typically in the amount of the insured's purchase price for the property, which depending on the existing equity at the time of the purchase, could be many multiples of the existing encumbrance.

31. FNTIC has not received any confirmation from Washburn or his insurance carrier that Washburn has adequate assets or insurance available to satisfy the losses that FNTIC has already incurred or will continue to incur as a result of the Defalcations, much less the increase in damages that will incur if FNTIC is unable to immediately determine the persons and liens affected by the Defalcations and that Washburn caused to receive an insurance commitment from FNTIC.

32. Therefore, FNTIC prays for preliminary and permanent injunctive relief:

a. directing Washburn to maintain and preserve either the originals or, if required to provide the originals to the Bar or another governmental entity, true, accurate and complete copies of all file and financial records, whether in paper or electronic form, related to the real estate transactions wherein Washburn issued or caused to be issued a FNTIC ICL or Policy and the Defalcations;

b. directing that Washburn provide FNTIC five (5) days written notice of the modification or termination of the Consent Order prior to Washburn disbursing any entrusted funds (as defined in the Consent Order) following the

modification or termination of that Consent Order; and

c. directing Washburn to immediately provide FNTIC with true, accurate and complete copies of the documents, whether paper or electronic, as it relates to the approximately 138 transactions wherein he issued a FNTIC ICL or Policy ("***FNTIC Files***"), including:

   i. the contents of Washburn's closing platform as it relates to the FNTIC Files;

   ii. the documents reflecting his accounts and payment ledgers on the transactions wherein he issued or caused to be issued a FNTIC ICL or Policy;

   iii. The documents reflecting the provision of funds to Washburn on the FNTIC files, including the lender or Buyer providing funds to Washburn, the contact information, and the loan or payment amount; and

   iv. the prior lien or encumbrance information on the FNTIC files, including the seller and lienholder's contact information, the amount of the prior lien or encumbrance.

### FOR A SECOND CAUSE OF ACTION – JURY TRIAL DEMANDED
(Negligence/Gross Negligence/Negligence *Per Se* against the Washburn Defendants)

33. The prior paragraphs are reincorporated herein verbatim.

34. In exchange for a portion of payments made from FNTIC to its agent, Buccaneer Title, Washburn undertook to perform real estate closings and issue FNTIC ICLs and Policies to third parties that purport to obligate FNTIC to make payments in the event of loss by reason of encumbrances, defective title, or Washburn's failure to properly perform the services necessary to conduct a real estate closing.

35. As a result of this non-gratuitous undertaking, Washburn owed FNTIC a duty to exercise the reasonable care and skill ordinarily used by other persons engaged in these practices.

36. Washburn breached this duty by acting in a negligent, grossly negligent, willful and wanton manner that violated North Carolina law by:

    a. failing to protect entrusted funds and apply them towards the proper purpose;

    b. permitting entrusted funds to be stolen by a person acting on Washburn's behalf despite a legal obligation to supervise employees and trust accounts to prevent this from occurring;

    c. failing to properly perform the services necessary to conduct a real estate closing and causing FNTIC to face substantial damages on ICLs and Policies that would have been avoided by the use of reasonable care;

    d. and in such other ways as will discovered during this action and shown at trial.

37. As a result of Washburn's negligent, grossly negligent, willful, wanton, and illegal misconduct, FNTIC has suffered actual damages and loss and is entitled to recover all foreseeable damages it suffers as a result, as well as punitive damages, and such other relief as the court may deem just and proper.

**FOR A THIRD CAUSE OF ACTION – JURY TRIAL DEMANDED**
(Negligence/Gross Negligence/Negligent Hiring & Supervision against Buccaneer Title)

38. The prior paragraphs are reincorporated herein verbatim.

39. As FNTIC's title agent, Buccaneer owed FNTIC a duty to exercise the reasonable care and skill ordinarily used by other title agents.

40. Buccaneer breached this duty in a negligent, grossly negligent, and wanton manner by:

a. failing to adhere to generally accepted title insurance practice standards when it contracted with and utilized non-approved attorney(s) and law firm(s) in connection with the issuance of FNTIC ICLs and Policies;

b. failing to supervise and implement reasonable safeguards to prevent its employees from contracting with and utilizing lawyer(s) and law firm(s) that FNTIC did not approve;

c. failing to adhere to generally accepted title insurance practice standards when issuing ICLs and Policies for FNTIC;

d. failing to monitor and supervise Washburn's performance of his obligations after choosing to work with Washburn on FNTIC ICLs and Policies when it knew or should have known of his incompetence; and

e. and in such other ways as will discovered during this action and shown at trial.

41. As a result of Buccaneer's negligent misconduct, FNTIC has suffered actual damages and loss and is entitled to recover all foreseeable damages it suffers as a result, as well as punitive damages, and such other relief as the court may deem just and proper.

### FOR A FOURTH CAUSE OF ACTION – JURY TRIAL DEMANDED
(Breach of Contract against Buccaneer Title)

42. The prior paragraphs are reincorporated herein verbatim.

43. On May 12, 2022, FNTIC and Buccaneer entered into that certain National Underwriting Agreement ("Underwriting Agreement") by and between them, which is a valid and binding contract between them.

44. Pursuant to the Section E of the Underwriting Agreement, Buccaneer is obligated to comply with all of Buccaneer's underwriting requirements, including but not limited to working only with FNTIC-approved attorneys when issuing FNTIC ICLs and/or

Policies.

45. Further, pursuant to Section I of the Underwriting Agreement, Buccaneer is obligated to indemnify, reimburse and hold FNTIC harmless from losses, including but not limited to losses FNTIC suffers:

   a. because of payments to or for the benefit of an insured or person protected under an ICL;

   b. due to the gross negligence, fraud or intentional act or omission of its employees, representatives, or independent contractor's failure to meet any obligation set forth in the Underwriting Agreement;

   c. because of violations of escrow or closing instructions or its ICL;

   d. because of failures to discover or disclosure matters or instruments of record affecting title; or

   e. because Buccaneer or its employees, representatives, independent contractors, or agents failed to follow FNTIC's underwriting requirements.

46. Buccaneer has committed a material breach of the Underwriting Agreement by failing to adhere to FNTIC's underwriting requirements, working with an unapproved attorney in connection with the issuance of FNTIC ICLs and Policies, and failing to indemnify FNTIC for losses.

47. As a result of Buccaneer's material breach, FNTIC is entitled to an award of all general and special damages, including but not limited all losses paid in connection with an ICL or Policy issued in connection with Washburn, attorneys' fees and litigation costs associated with this action and any action involving an insured under a Policy or person protected under an ICL issued in connection with Washburn, prejudgment interest, and such

other relief as the court may deem just and proper.

WHEREFORE, FNTIC respectfully requests that this court grant it a preliminary and permanent injunction as set forth in paragraph 31 above; enter judgment against Washburn, jointly and severally, for all actual and punitive damages a jury decides it is entitled to receive, together with any costs, interest and attorneys' fees available to FNTIC under the prevailing law; enter judgment against Buccaneer, jointly and severally, for all actual, punitive, general and special damages a jury decides it is entitled to receive, together with all costs, interest, and attorneys' fees available to FNTIC under the Underwriting Agreement and prevailing law; and such other relief as the Court may deem just and proper.

s/ Shaun C. Blake
Shaun C. Blake (N.C. Bar # 35819)
Andrew B. Walker (*pro hac vice* pending)
ROGERS LEWIS JACKSON MANN & QUINN, LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Phone: (803) 256-1268
Fax: (803) 252-3653
Email: sblake@rogerslewis.com
dwalker@rogerslewis.com

&

Jeremy T. Brown (*pro hac vice* pending)
Keating Brown, PLLC
2425 N. Central Expy. Ste. 200
Richardson, Texas 75080
Phone: (214) 390-7703
Fax: (214) 989-4146

January 31, 2023       ATTORNEYS FOR PLAINTIFF