IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-CV-29-MR-WCM

| | |
|---|---|
| FIRST NATIONAL TITLE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>BUCCANEER TITLE, LLC,<br><br>    Defendant. | MEMORANDUM AND RECOMMENDATION |

Before the Court is a Partial Motion to Dismiss (the "Motion," Doc. 14) filed by Buccaneer Title, LLC. The Motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.    Procedural Background

On January 31, 2023, First National Title Insurance Company ("Plaintiff") filed suit against Jonathan W. Washburn ("Washburn"), Washburn Law, PLLC ("Washburn Law"), and Buccaneer Title, LLC. Doc. 1.

On April 6, 2023, Plaintiff filed an Amended Complaint that named Buccaneer Title, LLC ("Defendant") as the sole defendant.[1] Doc. 11.

---

[1] Plaintiff states that Washburn and Washburn Law were removed as parties because they filed for bankruptcy protection. Doc. 11 at ¶ 1.

1

On April 20, 2023, Defendant filed the Motion and a supporting memorandum. Docs. 14, 15. Plaintiff has responded, and Defendant has replied. Docs. 16, 17.

## II. Plaintiff's Allegations

Plaintiff is a title insurance company that has been licensed by the North Carolina Department of Insurance to issue title insurance since January 2021. Doc. 11 at ¶¶ 3, 9.

Plaintiff alleges that, pursuant to N.C.G.S. § 58-26-1(a), it may issue 1) insured closing letters/closing protection letters ("ICLs") that insure the proper performance of services necessary to conduct a real estate closing performed by an "approved attorney" licensed to practice in North Carolina and 2) title insurance policies ("Policies") that insure owners and others against loss by reason of encumbrances and defective title. Id. at ¶ 10.

Plaintiff states that it issues underwriting guidelines to its title agencies and approves specific attorneys and law firms that Defendant may rely upon when issuing an ICL or Policy underwritten by Plaintiff, that a licensed North Carolina lawyer must perform most of the functions of a real estate closing, and that North Carolina law prohibits the issuance of a Policy unless an attorney, who is licensed to practice law in North Carolina and who is neither an employee nor an agent of the title insurance company, has conducted or supervised a reasonable examination of the title. Id. at ¶¶ 11–13.

2

Plaintiff alleges that Defendant has been licensed as a title insurance agency in North Carolina since April 2022 and is an insurance producer within the meaning of N.C.G.S. § 58-3-10(7). Id. at ¶ 14.

Defendant is authorized to issue ICLs and Policies on Plaintiff's behalf to Defendant's customers. Id. at ¶¶ 3, 16. In that regard, on May 12, 2022, Plaintiff and Defendant entered a National Underwriting Agreement ("the Underwriting Agreement") to this effect. Id. at ¶ 31.[2]

On December 12, 2022, Plaintiff learned that Defendant had utilized Washburn in real estate closings that had resulted in the issuance of Plaintiff's ICLs and Policies and that Washburn's "ability to conduct real estate transactions had been halted by the North Carolina State Bar" due to the "mishandling and purported stealing of entrusted funds by persons affiliated with Washburn Law." Id. at ¶¶ 18, 2. In particular, Plaintiff alleges that Washburn conducted, at Defendant's request, approximately 138 real estate transactions involving the issuance of Plaintiff's ICLs or Policies, resulting in a loss of over $1.25 million dollars. Id. at ¶¶ 19-20.

---

[2] Defendant has submitted the Underwriting Agreement. Doc. 15-1. Because Plaintiff has not challenged the Underwriting Agreement's authenticity and because Plaintiff relies on the Underwriting Agreement in its Amended Complaint, the Court may consider the document in the context of the Motion. See Schneider v. Donaldson Funeral Home, P.A., 733 Fed. Appx 641, 645 (4th Cir. 2018) (quoting Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016)).

Plaintiff alleges that it never approved Washburn to perform any aspects of a real estate transaction insured by Plaintiff, and never authorized Defendant to issue an ICL insuring Washburn's performance of services necessary to conduct a real estate closing but, to the contrary, explicitly denied a request by another title agency "to approve Washburn earlier in 2022…." Id. at ¶ 17.

### III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the Court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The Court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV. Analysis

Plaintiff's Amended Complaint includes three claims: (1) breach of fiduciary duty; (2) negligence/gross negligence/negligence per se; and (3) breach of contract. Defendant has moved to dismiss Plaintiff's claims for breach of fiduciary duty and negligence/gross negligence/negligence per se based on application of the economic loss rule. Defendant also moves to dismiss Plaintiff's request for punitive damages.

A. Plaintiff's Tort Claims

"North Carolina's economic loss rule provides that '[o]rdinarily, a breach of contract does not give rise to a tort action by a promisee against the promisor.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73 (1978)).[3] The Fourth Circuit has explained that a "'tort action must be

---

[3] Jurisdiction in this matter is premised on 28 U.S.C. § 1332 and therefore North Carolina substantive law applies to Plaintiff's claims. Talkington v. Atria Reclamelucifers Fabrueken BV, 152 F.3d 254, 260 (4th Cir. 1998) (citing Erie R.R. Co. v. Thompkins, 304 U.S. 64 (1938)).

grounded on a violation of a duty imposed by operation of law,' not a violation of a duty arising purely from 'the contractual relationship of the parties.'" Legacy Data, 889 F.3d at 164 (quoting Rountree v. Chowan Cty., 252 N.C.App. 155, 160 (2017) (citation and internal quotation marks omitted)).

"Thus, a 'tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract.' 'It is the law of contract,' not tort law, 'which defines the obligations and remedies of the parties in such a situation.'" Id. (internal citations omitted)). "Accordingly, 'North Carolina law requires' courts 'to limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim.'" Id. (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (quoting Newton v. Standard Fire Ins. Co., 291 N.C. 105 (1976)); see also id. ("In preventing parties from asserting tort claims for a simple breach of contract, the economic loss rule thus 'encourages contracting parties to allocate risks for economic loss themselves.'") (quoting Lord v. Customized Consulting Specialty, Inc., 182 N.C.App. 635 (2007)).

### 1. Breach of Fiduciary Duty

Plaintiff first argues that Defendant owed Plaintiff a fiduciary duty that was distinct from any obligation imposed pursuant to the Underwriting Agreement.[4]

"'[I]n North Carolina ... there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client ... partners, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'" Austin Maintenance & Const., Inc. v. Crowder Const. Co., 224 N.C.App. 401, 409 (2012) (quoting Ellison v. Alexander, 207 N.C.App. 401, 408 (2010) (quoting S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C.App. 601, 613 (2008) (internal citation omitted)).

#### a. Fiduciary Duty Pursuant to Statute

Plaintiff seems to contend that North Carolina statutory law imposes a fiduciary duty on Defendant. Doc. 16 at 4–5; Doc. 11 at ¶ 10 (citing N.C.G.S. § 58-26-1(a)).

---

[4] Plaintiff does not argue that the execution of the Underwriting Agreement itself imposed fiduciary duties on the parties. See e.g., Dreamstreet Invs., Inc. v. MidCountry Bank, 842 F.3d 825, 831 (4th Cir. 2016) (citations omitted) (under North Carolina law "… parties to a contract . . . generally do not become each other's fiduciaries; what they owe each other is defined by the terms of their contracts, with no special duty of loyalty"); see also Broussard, 155 F.3d at 347 (same) (citing Branch Banking & Trust Co. v. Thompson, 107 N.C.App. 53 (1992)).

7

Plaintiff, though, cites no case law holding that N.C.G.S. § 58-26-1(a) imposes a fiduciary duty, and the statute itself does not appear to create a fiduciary relationship.

### b. Fiduciary Duty Based on the Parties' Relationship

Under North Carolina law, "the principal-agent relationship gives rise to a fiduciary duty." Troche v. Bimbo Foods Bakeries Distribution, Inc., No. 3:11-CV-234-RJC-DSC, 2015 WL 4920280, at *6 (W.D.N.C. Aug. 18, 2015) (citations omitted). Plaintiff does not argue directly that there was a principal/agent relationship between the parties such that Defendant owed Plaintiff fiduciary duties as a matter of law.[5]

Plaintiff does assert, however, that there was a fiduciary relationship because Plaintiff placed special confidence in Defendant, who held "superiority and influence" over the issuance of Plaintiff's ICLs and Policies and who was "bound to act in good faith and with due regard to the interests of [Plaintiff] on matters within the scope of its fiduciary relationship with [Plaintiff]." Doc. 16 at 4-5; Doc. 11 at ¶ 22.

---

[5] Further, while the Underwriting Agreement refers to Defendant as Plaintiff's "agent," Doc. 15-1 at 2, it does not automatically follow that a principal-agent relationship existed. See Lumbermen's Mut. Cas. Co. v. First Ins. Servs., Inc., No. 5:04–CV–580–H, 2008 WL 4790388, at *8 (E.D.N.C. Oct. 28, 2008) (stating that though the parties "entered into a contractual agreement in which the [defendant] was described as [plaintiff's] 'agent' . . . the fact that the agreement describes the Agency as an "agent" is not dispositive").

8

Here, it is questionable whether Plaintiff's factual allegations are sufficient, even at this early stage, to support a conclusion that a fiduciary relationship existed between the parties.

Nonetheless, even if it is assumed that Defendant owed a fiduciary duty to Plaintiff, "according to the economic loss doctrine, the Plaintiff may not bring a fiduciary duty claim where the duty arises from an underlying contract." Troche, 2015 WL 4920280, at *6 (citing Wilkins v. Wachovia Corp., No. 5:10–CV–249, 2011 WL 1134706, at *2 (E.D.N.C. March 24, 2011)).

Plaintiff alleges that Defendant had a fiduciary duty "to ensure [Defendant] had a competent understanding of North Carolina's legal requirements for the issuance of [Plaintiff's] ICL[s] and Policies and to exercise its control over the issuance of [Plaintiff's] ICLs and Policies with due regard to [Plaintiff's] interests." Doc. 11 ¶ 23. With respect to Plaintiff's breach of contract claim, Plaintiff similarly alleges that the Underwriting Agreement obligated Defendant to "receive and process orders for [Plaintiff's] title insurance in a timely, prudent, and ethical manner, with due regard to recognized generally accepted title insurance underwriting practice standards and in accordance with [Plaintiff's] underwriting requirements…." Id. at ¶ 32(a).

Additionally, Plaintiff alleges that Defendant breached its fiduciary duty to Plaintiff by "utilizing Washburn to perform closing services and issuing ICLs

9

Case 1:23-cv-00029-MR-WCM   Document 22   Filed 10/02/23   Page 9 of 14

insuring Washburn's proper performance of services without obtaining approval, without properly vetting Washburn…, without adequately supervising Washburn's performance, and without complying with North Carolina law." Id. at ¶ 24. Similarly, Plaintiff contends that Defendant breached the Underwriting Agreement by "failing to adhere to [Plaintiff's] underwriting requirements, [and] working with an unapproved attorney in connection with the issuance of [Plaintiff's] ICLs and Policies…." Id. at ¶ 34.

That is, the same underlying duties and the alleged breach of those duties – Defendant's utilization of Washburn's services without Defendant's approval – is the basis for both the breach of contract claim and the breach of fiduciary duty claim.

In addition, Plaintiff seeks the same damages associated with each claim.

The undersigned is therefore persuaded that Plaintiff's breach of fiduciary duty claim is barred by the economic loss rule and will recommend the dismissal of this claim on that basis. See Troche, 2015 WL 4920280, at *6 ("Because Plaintiff has failed to allege a fiduciary duty that Defendant owed him separate from the Distributor Agreement, Count VI fails as a matter of law"); Wilkins, 2011 WL 1134706, at *2 ("Here, plaintiff's fiduciary duty claims arise out of the duties in the investment management agreement and relate to contract performance. As such, the court predicts that the North Carolina

10

Supreme Court would rely on the economic loss doctrine to bar the claims"); Haigh v. Superior Ins. Mgmt. Grp., Inc., 2017 NCBC 98, 2017 WL 4848154, at *6 (2017) ("In this circumstance, Superior Insurance's duty to negotiate with insurance carriers in good faith is based on the terms of the franchise agreements and the implied covenant of good faith and fair dealing. The alleged breach of that covenant, which arises from contract law, is better resolved through contract principles, rather than general principles of fiduciary relationships"); Wijewickrama v. Christian, 2023 NCBC 55, 2023 WL 5182585, at *9 (2023) ("Plaintiffs here fail to allege the existence and breach of any duties or damages separate and apart from those created by the Co-Counsel Agreement. Accordingly, the economic loss rule bars Plaintiffs' breach of fiduciary duty claim").

### 2. Negligence, Gross Negligence, and Negligence per se

North Carolina's economic loss rule also bars negligence claims. See Legacy Data, 889 F.3d at 164.

Here, Plaintiff's negligence claim is based on Defendant's alleged failure to "adhere to generally accepted title insurance practice standards," "supervise and implement reasonable safeguards to prevent" Defendant's employees from utilizing lawyers and law firms that Plaintiff did not approve, "adhere to generally accepted title insurance practice standards when issuing ICLs and Policies," and "monitor and supervise Washburn's performance of his

11

obligations after choosing to work with Washburn on [Plaintiff's] ICLs and Policies . . . ." Doc. 11 at ¶ 28.

Because Plaintiff's negligence claim, like its breach of fiduciary duty claim discussed above, is based on the same underlying duties and conduct that support Plaintiff's breach of contract claim, the undersigned concludes that these allegations are more appropriately considered in the context of Plaintiff's claim for breach of contract and, therefore, will recommend that Plaintiff's negligence claim also be dismissed pursuant to the economic loss rule. See Great Am. Emu Co., LL v. E.J. McKernan, Co., 509 F.Supp. 3d 528, 542 (E.D.N.C. 2020) ("[D]efendant's failure to perform the enumerated terms of the contract, 'even though such failure was due to negligence or lack of skill,' cannot form the basis for an independent tort claim.") (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73 (1978)).

### B. Punitive Damages

In light of the recommended dismissal of Plaintiff's tort claims, the undersigned will also recommend that Plaintiff's claim for punitive damages be dismissed. Legacy Data, 889 F.3d at 167; N.C.G.S. § 1D-15(d) (1996) ("Punitive damages shall not be awarded against a person solely for breach of contract."); BDM Investments v. Lenil, Inc., 264 N.C.App. 282, 311 (2019) (" a claim for punitive damages is not an independent claim;") McMahon v. Synthron, Inc., No. 1:05-CV-324, 2006 WL 149054, at *5 (W.D.N.C. Jan. 18,

2006) (noting that "punitive damages is not a cause of action, but is instead a remedy") (citing Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991)).

## V. Recommendation

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the Partial Motion to Dismiss (Doc. 14) be **GRANTED** and that Plaintiff's claims for breach of fiduciary duty and negligence, gross negligence, and negligence per se be **DISMISSED WITH PREJUDICE**, and that Plaintiff's request for punitive damages be denied.

Signed: October 2, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).